UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| TAMMY HARRISON, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 6:10-CV-289-HAI |
| v. ) | |
| ) | OPINION AND ORDER |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |
| ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendant's Motion for Summary Judgment. D.E. 61. Defendant filed this timely motion on March 8, 2012. *Id.*; *see also* D.E. 50, at 3 (setting a dispositive motions deadline of March 8, 2012). Plaintiffs did not respond, and the deadline for doing so, per local rule, has expired. *See* L.R. 7.1(c) ("A party opposing a motion must file a response memorandum within twenty-one (21) days of service of the motion."). The motion is ripe for decision, and by the consent of the parties and pursuant to 28 U.S.C. § 636(c), the undersigned exercises jurisdiction over this case in its entirety. *See* D.E. 49 (Notice, Consent, and Reference of a Civil Action to a Magistrate Judge). For reasons discussed below, the Court **GRANTS** in full Defendant's Motion for Summary Judgment.

**I. Background Facts**

On August 20, 2009, Plaintiff Tammy Harrison had a dental appointment with Dr. Charles Vose, D.M.D., at the White House Clinic in Berea, Kentucky. The purpose of the appointment was "extraction of tooth number 14," a tooth located in the upper left portion of the mouth. D.E. 61-4 (hereinafter "Vose Depo Part I"), at 19. At the start of the appointment, Dr. Vose's dental assistant reviewed the "risks, benefits, and options" with Harrison, and Plaintiff

signed a consent form permitting Dr. Vose to extract the specified tooth. *Id.* at 20. Among other potential side effects, the informed consent document included information about "a chance of sinus infection or an opening between the mouth and sinus cavity" resulting from extraction of an upper tooth. D.E. 61-6 (hereinafter "Vose Depo Part III"), at 17. Due to its rarity, a possible risk of vision loss was not included in the informed consent document or as part of Plaintiff's consultation with the dental assistant. *Id.* (Dr. Vose noting that a "risk of visual loss or effects . . . would be such a rare occurrence, I don't think that you'd find that on any health history in the world.").

Following the above-mentioned consultation between Plaintiff and the dental assistant, Dr. Vose administered the anesthetic and extracted tooth number 14. Vose Depo Part I, at 20. Specifically, because the tooth had "very long roots," Dr. Vose had to "section the tooth into three roots and . . . pluck each one out individually," *id.* at 25, rather than simply "get hold of [the tooth] with . . . forceps . . . and just wiggle it out." *Id.* at 24. Dr. Vose characterized Plaintiff's procedure as a "[v]ery tough extraction." *Id.* Following the extraction, Plaintiff received oral and written postoperative instructions, to include Dr. Vose's admonitions for Plaintiff "not to smoke, to take the meds [he] gave her, to try not to sneeze or blow [her] nose or do anything to disturb the clot. Don't drink through a straw." *Id.* at 22-23. A friend, Melissa Brookley, drove Plaintiff home. D.E. 62-1, 2, 3, 4, 5, & 6 (hereinafter "Harrison Depo"), at 151.

During the ride home, Plaintiff's "whole face, into [her] neck" began to swell. *Id.* at 148. Plaintiff also experienced a crackling noise or sensation, which she describes as "sound[ing] like glass breaking." *Id.* at 162. Plaintiff does not recall coughing, sneezing, or having a headache before or during the onset of her face and neck swelling. *Id.* at 162-63. She also has no memory of gasping before the swelling occurred. *Id.* at 168. She does recall being short of breath, *id.* at

2

166, and remembers gasping in the helicopter during transport to the University of Kentucky Medical Center. *Id.* at 168. Ultimately, Plaintiff was diagnosed with having developed air emphysema, pneumomediastinum, pneumothorax, and loss of vision in her left eye. She was admitted to UK Medical Center on August 20, 2009, and was released three days later on August 23, 2009. Plaintiff can no longer "see anything out of" her left eye. *Id.* at 138; *id.* at 139 ("I can see shadows but not, I mean like, you know, if it's dark I can tell it's dark. If it's light I can tell it's light, but other than that as far as like anything else, no.").

On September 25, 2010, Plaintiff, with the assistance of counsel, filed the Complaint in this matter, setting forth medical malpractice claims against the United States of America, Department of Health and Human Services and Health Help, Inc., d/b/a White House Clinics. D.E. 1. Plaintiff's claims fall under the Federal Torts Claim Act (FTCA), 28 U.S.C. § 1346(b)(1) (2009), and the United States was later properly designated as the sole defendant in this action. D.E. 8. Following denial of Plaintiff's opposed motion for a settlement conference, D.E. 29, Plaintiff's counsel, on June 30, 2011, moved to withdraw from representation. D.E. 30. The Court granted the motion, D.E. 31, and provided Plaintiff with an extended amount of time to attempt to find new counsel. *See* D.E. 31 (21 days); D.E. 38 (additional 21 days). Having not obtained new counsel, Plaintiff continues to proceed pro se, or without an attorney, in this case.

On October 11, 2011, District Judge Van Tatenhove granted a motion to intervene by Commonwealth of Kentucky, Cabinet for Health and Family Services, Department of Medicaid Services. D.E. 44. Following a second Rule 26 planning meeting, the parties submitted a jointly-signed Notice, Consent, and Reference of a Civil Action to a Magistrate Judge, and the District Judge referred this case in its entirety to the undersigned. D.E. 49. The undersigned entered a new Scheduling Order that, among other things, set a deadline of March 8, 2012, for

filing any dispositive motions, with briefing (i.e. time for response and reply) governed by the local rules. D.E. 50, at 3. Defendant filed the instant motion for summary judgment in accordance with the March 8 deadline, but Plaintiff did not respond. The time for response is long overdue; thus, Defendant's motion is ripe for resolution.

## II. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*, 475 U.S. 574, 587-88 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). Additionally, the Court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The burden of establishing the absence of a genuine issue of material fact initially rests with the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (requiring the moving party to set forth "the basis for its motion, and identify[] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate an absence of a genuine issue of material fact"); *Lindsay*, 578 F.3d at 414 ("The party moving for summary judgment bears the initial burden of showing that there is no material issue in dispute."). The moving party may support his or her "assert[ion] that a fact cannot be . . . disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory

answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).  Alternatively, the moving party may make a "showing that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* at 56(c)(1)(B).

If the moving party meets its burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *See Celotex Corp.*, 477 U.S. at 324; *Bass v. Robinson*, 167 F.3d 1041, 1044 (6th Cir. 1999).  In cases, as here, where the defendant is the moving party, "the plaintiff, to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor.  If he does so, there is a genuine issue of fact that requires a trial." *See Anderson*, 477 U.S. at 257.  However, Rule 56 "mandates entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex Corp.* at 477 U.S. at 322.

"Materiality" depends upon the underlying substantive law.  *See Anderson*, 477 U.S. at 248.  Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *See id.*  A "genuine" dispute exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *See id.* at 249; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (citation omitted).

As specifically relevant to this case, Rule 56(e) provides the Court with several options for addressing a situation in which the non-moving party fails to respond to a motion for summary judgment. Thus, the Court may

    (1) give an opportunity to properly support or address the fact;

    (2) consider the fact undisputed for purposes of the motion;

    (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or

    (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). Additionally, the Court may consider other materials already in the record. *Id.* at 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

### III. Analysis

As noted above, Plaintiff Harrison brought this action under the Federal Tort Claims Act (FTCA). The FTCA grants the District Court "exclusive jurisdiction of civil actions on claims against the United States, for money damages, . . . [for] personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . ." 28 U.S.C. § 1346(b)(1) (2009); *see Muhammad v. United States*, No. 08-CV-131-KKC, 2009 WL 3161481, at *4 (E.D. Ky. Sept. 28, 2009) (unpublished) ("[I]f a federal employee's conduct in Kentucky would render him or her liable for negligence under Kentucky law, the United States may be held accountable under the FTCA."). When exercising this jurisdiction, the District Court must apply "the law of the place where the act or omission occurred." *Id.*

In an action alleging medical malpractice, Kentucky law requires a plaintiff to "prove that the treatment given was below the degree of care and skill expected of a reasonably competent practitioner and that the negligence proximately caused injury or death." *Reams v. Stutler*, 642 S.W.2d 586, 588 (Ky. 1982); *Heavrin v. Jones*, No. 2002-CA-000016-MR, 2003 WL 21673958, at *1 (Ky. App. July 18, 2003) (unpublished) ("To establish a prima facie case of medical malpractice, a plaintiff must introduce evidence, in the form of expert testimony, demonstrating (1) the standard of care recognized by the medical community as applicable to the particular defendant, (2) that the defendant departed from that standard, and (3) that the defendant's departure was a proximate cause of the plaintiff's injuries."). Aside from narrow exceptions not present in this case, a plaintiff in a medical malpractice action is "required to put forth expert testimony to show that the defendant medical provider failed to conform to the standard of care." *Blankenship v. Collier*, 302 S.W.3d 665, 670 (Ky. 2010) (citing *Perkins v. Hausladen*, 828 S.W.2d 652, 655-56 (Ky. 1992)); *Muhammad*, 2009 WL 3161481, at *4.

Here, Defendant, as the moving party, has met its burden of establishing that no genuine dispute as to any material fact exists in this case. Specifically, sworn testimony from Plaintiff's treating dentist, Dr. Vose, and the reports of two expert witnesses demonstrate that Dr. Vose did not fail to conform to the appropriate standard of care when extracting Plaintiff's tooth. During his deposition, Dr. Vose testified that his dental assistant reviewed the informed consent document with Plaintiff, and Dr. Vose noted that the form included information about the risk of Plaintiff contracting a sinus infection or having an opening develop between her mouth and sinus cavity. Vose Depo Part III, at 17. Harrison's testimony confirms that she was so informed. Harrison Depo at 195. Dr. Vose also testified that he performed the tooth extraction in accordance with standard practice, taking care to divide and pull out the deep-rooted tooth in

7

sections, Vose Depo Part I, at 25, and introducing Peridex, an oral rinse, but not air into the extraction site during the procedure. Vose Depo Part III, at 29 (stating that he used Peridex to "irrigate[] the socket out to get debris out of there").

Turning to the expert reports, Defendant attached the written opinions of two witnesses designated to provide expert testimony at trial. Dr. Brian Alpert, D.D.S., F.A.C.D., is the Chair of the Department of Surgical and Hospital Dentistry at the University of Louisville, a position he has held since 1989. D.E. 61-17, at 2. Dr. Alpert is also a professor of oral and maxillofacial surgery at the University of Louisville, a position he has held since 1978. *Id.* During his review of this case, he read Plaintiff's Complaint, the parties' interrogatories and responses, and specified medical and dental records of Plaintiff. D.E. 61-18 (hereinafter Alpert Report), at 1. Dr. Alpert opines that Dr. Vose adhered to the standard of care required for a dentist performing the tooth extraction underlying this cause of action. *Id.* Specifically, Dr. Alpert states as follows:

1. He evaluated her hypertension determining that since she was under care for it, it was appropriate to proceed.
2. He recognized the prospect of surgical removal and sinus exposure and offered her referral to an oral and maxillofacial surgeon.
3. He gave her proper verbal and written informed consent.
4. He properly performed the procedure using the appropriate instrumentation.
5. He gave her proper postoperative instructions.
6. Her complication could possibly be related to the necessary treatment of her dental disease but nothing was done incorrectly or below the standard of care.

*Id.* at 2. Furthermore, Dr. Alpert states that "[a]ir emphysema is a complication which classically occurs when a dental handpiece which exhausts air into the wound or a high pressure syringe is used. The occurrence is instantaneous, not sometime later." *Id.* Applying this generality to Plaintiff's case, Dr. Alpert states that Dr. Vose used a proper surgical handpiece and

that Plaintiff developed air emphysema later in the day, not instantaneously. *Id.* Dr. Alpert also notes that "[n]o one has yet been able to determine the etiology[1] of the loss of vision in [Plaintiff's] left eye." *Id.* (Footnote added). Plaintiff did not respond to Defendant's motion, and the record contains no information to contradict this evaluation; thus, Dr. Alpert's opinion is uncontested.

Defendant also attached a written report from Dr. Michael G. Ehrie, Jr., M.D., a Clinical Assistant Professor in the Department of Medicine at Marshall University School of Medicine. D.E. 61-15, at 2. As relative to this case, Dr. Ehrie is Board Certified in Internal Medicine and in Pulmonary Medicine Subspecialty. *Id.* At the request of defense counsel, Dr. Ehrie reviewed specified medical records of Plaintiff, to include X-rays and CT scans. D.E. 61-16 (hereinafter Ehrie Report), at 1. He notes that "Pneumomediastinum is a recognized, but extremely rare, complication of a dental procedure." *Id.* at 2. Additionally, once Plaintiff was treated, any future "lung infections or breathing problems would <u>NOT</u> be due to the previous Pneumomediastinum." *Id.* (emphasis original). Dr. Ehrie also states that he has never seen lasting eye problems in patients he has treated for Pneumomediastinum. *Id.* ("I have personally treated over a hundred patients with Pneumomediastinum over 30 years, and none of these patients ever had lasting eye problems."). Ultimately, Dr. Ehrie finds no deviation from the standard of care by Dr. Vose, and he concludes that Plaintiff's "complication . . . [was] unpredictable, unavoidable, and could not have been prevented." *Id.* Again, as with Dr. Alpert's report, nothing in the record contradicts Dr. Ehrie's conclusions, and Plaintiff has not offered a

---

[1] The term "etiology" in a medical context means "the causes of a specific disease." Webster's New World Dictionary of the American Language 481 (2nd College ed. 1986).

9

competing opinion or other evidence for a jury to find in her favor. Dr. Ehrie's opinions are uncontested.

Taken together, Dr. Vose's deposition testimony and the Alpert and Ehrie reports demonstrate a lack of genuine dispute of material fact as to whether Dr. Vose deviated from the standard of care in extracting Plaintiff's tooth. Defendant has met its burden under Rule 26 and relevant case law.

As noted above, Plaintiff failed to respond to Defendant's motion. The Court is sensitive to the fact that Plaintiff is proceeding without the assistance of counsel. Having read Plaintiff's deposition and letters in the record, the Court is also very much aware of Plaintiff's limited education and ongoing physical difficulties. Indeed, if Plaintiff had responded to Defendant's motion, the Court would have carefully considered the contents of her filing, even if in the form of a letter like her previous filings, in its analysis of Defendant's motion for summary judgment. *See, e.g., Owens v. Keeling*, 461 F.3d 763, 776 (6th Cir. 2006) ("We construe filings by pro se litigants liberally."); *Grill v. A-1 Amusement & Party Rental, Inc.*, No., 2007 WL 2122169, at *2 (E.D. Ky. July 20, 2007) (unpublished) ("[C]ase law supports construing the letter as a pleading.").

That said, even though Plaintiff lacks the benefit of counsel, Plaintiff nevertheless must actively participate in and offer evidence to support her case and must comply with the legal requirements for doing so. As noted above, Defendant met its burden of showing an absence of a genuine dispute; thus, Plaintiff was required to "present evidence from which a jury might return a verdict in [her] favor." *See Anderson*, 477 U.S. at 257. Instead, Plaintiff remained silent, even choosing not to file so much as a letter as she had done in the past. *See* D.E. 36; D.E. 40; D.E. 47; D.E. 56. Based on Plaintiff's silence in the face of a supported motion for summary

judgment, Rule 56 permits the Court to deem facts undisputed for purposes of the motion and to "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)-(3).

As previously discussed, Defendant has presented evidence, in the form of sworn testimony and two expert reports, which directly contradicts Plaintiff's claim that Dr. Vose breached his standard of care during the extraction.  These statements are uncontested. Additionally, sworn testimony from both Plaintiff and Dr. Vose confirms that Plaintiff knew that the potential risks of the tooth extraction included a risk of a "sinus infection or an opening between the mouth and sinus cavity."  Vose Depo Part III, at 17; Harrison Depo at 195.  Finally, both defense experts opine that Plaintiff's medical complications, particularly her loss of function in her left eye, were not caused by the tooth extraction.  These opinions, too, are uncontested.  Plaintiff has not put forth any expert testimony to the contrary.  Put another way, Plaintiff has not demonstrated a genuine issue of material fact as to whether Dr. Vose acted improperly and his improper actions caused the injuries she suffered on August 20, 2009, including the continued lack of vision in her left eye.  In short, Plaintiff's claim fails, and Defendant is entitled to a judgment as a matter of law.

### IV. Conclusion

For reasons discussed above, the Court finds that no genuine dispute as to a material fact exists and that Defendant is entitled to judgment as a matter of law.  Therefore, the Court **GRANTS** in full Defendant's motion for summary judgment and **ORDERS** that Plaintiff's Complaint (D.E. 1) is **DISMISSED WITH PREJUDICE**.  The Court will enter a separate Judgment.

This the 11th day of July, 2012.



Signed By:
*Hanly A. Ingram*
United States Magistrate Judge